### N. L. CARPENTER.& CO. et al. v. LYBRAND.

(Circuit Court of Appeals, Fourth Circuit. December 17, 1915.)

No. 1384.

1. BANKRUPTCY ⬱91—INSOLVENCY—SURPLUS OF ASSETS OVER LIABILITIES.

Where it appeared, from the books of an alleged bankrupt and from a statement introduced by him, that his assets were far in excess of his liabilities, the District Court was justified in refusing to find that he was insolvent.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 137–139; Dec. Dig. ⬱91.]

2. **BANKRUPTCY ⊙60—"ACT OF BANKRUPTCY"—ASSIGNMENT FOR CREDITORS.**
Where, though an embarrassed debtor, pursuant to a scheme agreed upon at a meeting of his creditors, executed a deed of trust, conveying all of his property, except a house and lot, to a trustee, such deed of trust was delivered to an attorney in escrow, to be delivered only in the event that all of the creditors should consent to the agreement, the execution of such deed was not an act of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. ⊙60.

For other definitions, see Words and Phrases, First and Second Series, Act of Bankruptcy.]

3. **BANKRUPTCY ⊙91—ACTS OF BANKRUPTCY—ASSIGNMENT FOR CREDITORS.**
Where it was shown that the creditors of such debtor had been receiving payments on their debts, pursuant to the agreement entered into at the creditors' meeting, and that all the creditors would be paid in full within 90 days, it sufficiently appeared that it was not the debtor's purpose, in executing the deed of trust, to hinder, delay, or prevent his creditors from collecting their debts.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 137–139; Dec. Dig. ⊙91.]

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Columbia, in Bankruptcy; Henry A. Middleton Smith, Judge.

Proceeding by N. L. Carpenter & Co. and others to have J. W. Lybrand adjudicated a bankrupt. From a judgment dismissing the petition, the petitioning creditors appeal. Affirmed.

J. W. Vincent, of Hampton, S. C. (Joseph E. Johnson, of Warsaw, N. C., and E. A. Brown and William M. Smoak, both of Aiken, S. C., on the brief), for appellants.

J. N. Nathans, of Charleston, S. C. (Nathans & Sinkler, of Charleston, S. C., on the brief), for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. The appellee was, at the time of the filing of the petition herein, engaged in the mercantile business. It was alleged in the petition that appellee, while insolvent, had made certain preferences and that he had made a general assignment for the benefit of his creditors. These allegations were denied by the alleged bankrupt. The learned judge who heard this case in the court below dismissed the petition upon the ground that no act of bankruptcy had been proven. It appears that Lybrand was heavily involved with his creditors. Numerous suits had been brought, and a number of judgments obtained against him. Creditors were pressing on every side. Under these circumstances Lybrand called a meeting of his creditors at Charleston on the 29th day of December, 1914, and at that time the creditors appointed five of their number as a committee to take charge of Lybrand's assets. A statement was sent to the creditors, showing the financial condition of Lybrand, and urging them to join in the plan of action adopted by the creditors present at the Charleston meeting.

The result of the meeting at Charleston was the execution by Ly-brand of a deed of assignment conveying to T. S. Malone, as trustee, subject to the supervisory powers of the creditors' committee, all the property owned by Lybrand except a house and lot, valued at $2,000, in which he then resided. This deed was executed on the 21st day of January, 1915. The deed recites in the premises that Lybrand is indebted to sundry creditors in a large amount which he is unable to pay at present; that at a meeting held at Charleston on the 29th day of December, 1914, it was agreed that it would be for the best interest of Lybrand and his creditors for Lybrand to transfer to a trustee all his property, both real and personal, except his home in the town of Wagener, where he then lived. It further recites that five named persons were elected by the creditors at the meeting as an "advisory board" to represent the creditors and assist and supervise the trustee in the management and conduct of his trust. This advisory board is made the third party to the deed and is given therein certain explicit trusts to perform. The deed then purports to convey to Thomas S. Malone all the property, both real and personal, of the alleged bankrupt, except the house and lot in the town of Wagener, where he then resided.

The deed also sets out the conditions of trust and the powers to be exercised by the advisory board and Malone. The first condition empowers the advisory board (designated as the third party) to take charge of Lybrand's business and run it as the advisory board may deem advisable, to contract indebtedness, to mortgage, pledge, sell, and dispose of any or all of the property, when such disposition should meet the approval of a majority of the advisory board, also to fulfill any contract of purchase Lybrand had theretofore made, and to collect, settle, compromise, and sue for all the debts owing Lybrand, when necessary, in the name of the trustee. The second condition makes it the duty of trustee Malone to pay over moneys, realized from collections, to the creditors of the alleged bankrupt until all his creditors should be paid in full or all the property exhausted, such payments to be made under the direction of the other trustees, namely, the advisory board. The third condition of trust empowers the advisory board with discretion to remove trustee Malone, or any other trustee, and substitute another in his place, whenever and as often as the board should deem it best to do so.

The deed was delivered to Mr. J. N. Nathans, who testified that the same was to be held by him in escrow "and not delivered unless all of the creditors of Mr. Lybrand agreed to this proposed trusteeship." Malone, the trustee, went to Wagener on the 16th day of January, 1915, and remained there a day or two. He then went to his home in Georgia for a short stay, after which he returned to Wagener and has been there ever since. The bank account was immediately turned over to him as trustee. There were 133 chattel mortgages taken in his name as trustee. It is further insisted by counsel for appellants that the trustee looked after all claims in attorneys' hands for collection against the alleged bankrupt, and that he gave checks in payment of the same by himself as trustee; that he was drawing a salary of

$1,500, which was fixed for him by the advisory board. These are substantially the facts relied upon by the appellants.

At the trial in the court below it was shown that owing to the "depreciation caused by war conditions" the alleged bankrupt found himself in December, 1914, in a position where, if he attempted to realize on his assets in order to pay his creditors, that it would mean a needless sacrifice of them, and that, being desirous to pay his creditors in full, and realizing that, if he could secure a postponement for even a short time, his assets were amply sufficient to pay every creditor in full, and, such being the case, the meeting was held in Charleston for the sole purpose of formulating a plan for protecting the interests of himself as well as those of his creditors; that the committee being advised by counsel that unless all the creditors consented the trustee could not take charge of the property, and, being anxious to carry out the plan agreed upon, the alleged bankrupt executed a trust deed which was to become effective only when all the creditors consented thereto; that this deed was not delivered to the trustee at that time for the reason stated, but was delivered to J. N. Nathans, an attorney, to be held in escrow with the express understanding that it should not be delivered until all the creditors had consented. This fact was clearly established by the evidence of Mr. Nathans.

It was further shown that the advisory board requested Malone, the trustee, to go to Wagener in order that he might be on the spot to advise with Mr. Lybrand and the board, and thus be able to advise the board as to the manner in which Mr. Lybrand was conducting his business. It was also shown that the trustee, under a mistaken idea that he had a right to act as trustee before the delivery of the deed, had signed liens in his own name as trustee, and also had about $1,000 transferred to him, but when this was discovered the advisory board immediately had it stopped; that the liens taken by the trustee were such a small part of the assets of Lybrand that it could not be considered as an assignment when considered in connection with the fact that the deed had not been delivered.

[1] It is not seriously contended that the appellee was insolvent at the time of the filing of the petition. Appellee appeared with his books, and, among other things, introduced the following statement:

### Assets.

| | |
|---|---:|
| Merchandise (actual cost) | $ 22,500.00 |
| Accounts due me | 119,250.00 |
| Real estate | 59,200.00 |
| Bank stock | 15,000.00 |
| Real estate mortgages | 13,500.00 |
| 4,450 bales of cotton at $35 per bale | 155,750.00 |
| R. L. Lybrand stock | 5,000.00 |
| **Total assets** | **$390,200.00** |

### Liabilities.

| | |
|---|---:|
| Amount due on open accounts and notes outstanding | $158,806.66 |
| Owing to banks | 39,200.00 |
| Due on cotton holdings | 90,682.00 |
| **Total liabilities** | **$288,688.66** |

Thus it appears that the assets of the alleged bankrupt were far in excess of his liabilities. Such being the case, we think the action of the court below in refusing to find that appellee was insolvent is fully justified by the evidence.

[2] However, it is insisted by counsel for appellants that there was a general assignment which was executed and delivered. While it is not denied that a deed of trust was executed, Mr. Nathans, a reputable attorney, stated positively and unequivocally that this deed was placed with him to be held in escrow to be delivered in the event that all the creditors should consent to the agreement which had been entered into by the advisory board, and had not been delivered to the trustee. In Collier on Bankruptcy (9th Ed.) page 98, it is said:

"A debtor may have prepared a deed of assignment with intent to execute it, but so long as he has left it unexecuted or in escrow the general assignment contemplated has not been made."

Reference is also made to 13 Cyc. 567, and cases there cited. Indeed, this principle is so well settled that we do not deem it necessary to cite any other authorities in support thereof.

[3] It was shown that the creditors of the alleged bankrupt had been receiving payments on their debts in pursuance of the agreement entered into at Charleston, and that within 90 days all the creditors would be paid in full. This, we think, is sufficient to show that it was not the purpose of the appellee in executing the deed of trust to in any wise hinder, delay, or prevent his creditors from collecting the debts which he owed.

For the reasons stated, the judgment of the lower court is affirmed.